UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:05-CR-76 PS |
| ) | |
| JAMES WINBUSH, JR., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Winbush's Motion to Withdraw Plea of Guilty [Doc. 53]. Because the Court finds that Defendant has established a fair and just reason for withdrawing his plea, the Court grants Defendant's Motion.

## I.  BACKGROUND

Defendant Winbush was arrested on May 9, 2005. A grand jury returned a superseding indictment against Defendant on July 22, 2005. The superseding indictment alleged 4 counts: (1) possession with intent to distribute crack cocaine; (2) possession with intent to distribute marijuana; (3) possession of a firearm and ammunition as a felon; and (4) use of a firearm during a drug trafficking crime [Doc. 26]. On November 29, 2005, Winbush entered into a plea agreement with the government, pleading guilty to counts 1 and 4 [Doc. 39]. The plea agreement contained the following clause most pertinent to our discussion here:

> The United States of America recommends that the Court should impose a sentence upon me equal to the minimum of the applicable guideline range, taking into account the minimum mandatory consecutive penalties of five (5) years for the cocaine base and the seven (7) years for the firearms count charged in Count 4 of the Superceding indictment.

(Plea Agreement at ¶ 7(d)(ii).)

The change of plea hearing took place before this Court on December 1, 2005 [Doc. 40]. At the hearing, Defendant appeared with his attorney, Mr. Ray Szarmach. At the very outset of the hearing Defendant expressed his concern with trying to understand the plea agreement and this portended trouble ahead. As Defendant noted early on in the hearing, "I'm trying to fully understand this, Your Honor. I mean, I'm trying my best to really understand it, know what I'm sayin[g]." (*See* Change of Plea Tr. at 5.) Then, when the Court asked him if he was ready to proceed with the hearing, Defendant responded that he was but he wanted to "make sure [he had] this clear" – an apparent reference to the plea agreement. (*Id.* at 6.) When the Court asked him if he was there to plead guilty, Defendant responded that he was but that he also wanted "to make sure that the plea [was] right." (*Id.* at 6-7.) A few moments later when asked if the plea agreement was the product of some discussions or negotiations between his lawyer and the lawyer for the government, Defendant asked for the question to be clarified, and then said that all he was trying to accomplish was making "sure the agreement [was] right." (*Id.* at 10.)

At a later point, Defendant stated that he understood that the minimum term of imprisonment he faced was twelve years after discussing this aspect of his plea agreement with the Court. (*See id.* at 14-15; 18-19; 20.) The government further clarified this point to Defendant, stating: "I just want to make clear the Defendant understands he will still then get the 12 year minimum mandatory penalties if the guidelines are below 12 years." (*Id.* at 20.)

Defendant however raised other issues during the plea colloquy. For example, he expressed a lack of understanding of the concept of relevant conduct. The Court attempted to explain that even though two counts were going to be dismissed, the conduct underlying those two counts could still be attributed to him under the concept of relevant conduct. (*Id.* at 25-26.)

2

Defendant further expressed confusion over other aspects of the plea agreement.  For example, he stated that he thought he was looking at twelve years, which he thought was "going to be submitted in this plea." (*Id.* at 27.)

As a result of the obvious confusion over the plea as shown above, the Court at one point called a recess to ensure that Defendant actually wanted to plead guilty:

> Court: You understand again that the terms of paragraph 7 D of your plea agreement, those are merely recommendations that are being made to the Court, and I can reject those recommendations without permitting you to withdraw your plea of guilty, and I may impose a sentence that is more severe than you may anticipate.  Do you understand that?
>
> Defendant: That's what I'm afraid of, Your Honor[.]  I'm really afraid of giving up all of these rights.
>
> Court: All right. . . . I'm going to put an end to this.  I'm not comfortable that you are knowingly and intentionally – that you want to go forward with this. . . . So, when you're ready to go forward with this, you let the Court know.  And we're going to start this hearing over again, because I'm not comfortable that you want to go forward with this.

(*Id.* at 28.)  After the break, Defendant decided to continue with his guilty plea. (*See id.* at 29-30.)

The Court ultimately accepted Defendant's guilty plea. (*See id.* at 44-45.)  The Court, however, deferred acceptance of the plea agreement until sentencing after the Court had an opportunity to review the pre-sentence report (PSR). (*See id.* at 46.)

The probation officer assigned to this case provided a PSR to the Court on March 3, 2006, and further confusion over the plea ensued.  According to the PSR, it appeared that the probation officer – just like Defendant – thought that the plea agreement recommended a

3

sentence of 144 months. (*See* PSR ¶ 86.)[1] The government did not object to the probation officer's statement in the PSR that the plea agreement "reduc[ed] [Defendant's] sentence by eighty (80) months." (*Id.*) It was the Court who noted the incongruity between its interpretation of the plea agreement and the PSR, and the Court therefore discussed the matter with the probation officer. The officer stated that, when interviewing Defendant for the PSR, Defendant had believed that the plea agreement recommended a sentence of twelve years to the Court and that the probation officer read the plea agreement the same way.

Because of the confusion, the Court met with both parties seeking their opinion of what the plea agreement actually entailed. The government assured the Court that the twelve years was merely a floor – according to the plea agreement, the Court was to sentence Defendant to the minimum of the sentencing guidelines (plus seven years as an additional penalty for count 4, charged as an 18 U.S.C. § 924(c) violation) or to twelve years.

On June 30, 2006, Defendant filed a Motion to Withdraw Plea of Guilty, asserting that, based upon his reading of Paragraph 7(d)(ii), he believed he would receive twelve years or the minimum of the applicable guideline range, and that the guideline minimum would not be increased by the seven years. Instead, according to Defendant, the seven years for the firearms count would be taken into account in the "minimum of the applicable guideline range." (Def.'s Mot. at 1-2.) Indeed, that is precisely what the plea agreement said. (*See* Plea Agreement at ¶ 7(d)(ii).) More specifically, with Defendant's sentencing guideline range of 140 to 175 months (*see* PSR ¶ 86), Defendant believed that the government would recommend a sentence of twelve

---

[1] There are two versions of the PSR. The one referred to in this Order is the first version with the addendum prepared on March 2, 2006.

4

years because the minimum of the applicable range (140 months) did not reach the sentencing floor (12 years) and the enhanced penalty of seven years was already included in the guideline range.

The Court heard oral argument on the Motion to Withdraw Plea of Guilty on August 2, 2006 [Doc. 57]. After taking the Motion under advisement during the hearing, the Court now grants the Motion.

## II. DISCUSSION

Federal Rule of Criminal Procedure 11(d)(2)(B) requires that a defendant provide "a fair and just reason for requesting the withdrawal" of his guilty plea that has already been accepted by the Court. Fed. R. Crim. P. 11(d)(2)(B). This rule and principles of due process "require that a defendant's guilty plea be voluntarily (i.e., not induced by threats or promises of any kind) and knowingly made." *United States v. Ranum*, 96 F.3d 1020, 1024 (7th Cir. 1996). A defendant may withdraw a plea "if he can demonstrate that it was not entered into knowingly and voluntarily." *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002). Nevertheless, once a court accepts a defendant's plea as voluntarily and knowingly given, there is a high bar to satisfy the requirements of a "fair and just reason." *See United States v. Cieslowski*, 410 F.3d 353, 358 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 1021 (January 9, 2006) ("[W]hen 'a defendant wishes to withdraw his plea after he states at a Rule 11 hearing that it was given freely and knowingly, he faces an uphill battle in persuading the judge that his purported reason is fair and just.'") (citation omitted). The determination of whether a defendant has met this standard is within "the sound discretion of the [ ] judge." *Ranum*, 96 F.3d at 1025.

Several factors go into determining whether the plea of guilty was entered knowingly and

5

voluntarily.  "The validity of the Rule 11 colloquy is based on the totality of the circumstances, including such factors as the complexity of the charge, the defendant's level of intelligence, age and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as evidence proffered by the government." *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004) (citation and internal quotations omitted).

The Court, when looking at the totality of circumstances, finds that Defendant has provided a "fair and just reason" for seeking withdrawal of his guilty plea.  Simply put, the Court is convinced that Defendant did not understand the consequences of his plea.  As noted in the above section, the change of plea hearing transcript is replete with dialogue where Defendant appeared confused regarding the terms of the plea agreement and hesitant in answering the Court's questions.  The Court also sensed Defendant's discomfort during the hearing and called for a recess.

Nevertheless, if the change of plea colloquy was the only evidence of Defendant's lack of understanding, the Court would be less inclined to give Defendant the benefit of the doubt.  *See Loutos*, 383 F.3d at 619 ("The purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing. Representations and admissions made by a defendant in a plea agreement and during a change of plea hearing are therefore entitled to 'a presumption of verity.'") (citations omitted).  But that is not the case here.  Instead, the Court also must take into account the ambiguous language in the plea agreement, which puzzled not only Defendant but also the probation officer and even the Court.  Indeed, as mentioned above, in the PSR, the probation officer noted his belief that the

plea agreement called for a twelve-year sentence, which was 80 months below the sentence required by the application of the sentencing guidelines and the mandatory minimum for count 4 (the § 924(c) count).  (*See* PSR at ¶ 86.)  The language in paragraph 7(d)(ii) was sufficiently unclear that Defendant could have easily thought – just as the probationer officer did – that the government was recommending a minimum guideline range such that the minimum already included the additional seven years for count 4 of the superseding indictment.  Therefore, Defendant's misunderstanding of the language is further support that he did not understand the consequences of his plea.

The government, in its response and during the hearing, cites to cases where courts denied motions to withdraw guilty pleas when the defendants sought to withdraw their pleas because they incorrectly estimated their sentences.  (*See* Gov't Resp. at 9-11.)  Those cases are different.  Defendant in this case voiced his concern about pleading guilty during the change of plea hearing – months before he found out about the sentencing guideline range via the PSR.  His confusion regarding the plea agreement also surfaced during the plea colloquy and during his meeting with the probation officer – again, before he knew about the applicable sentencing range.

The government also attempts to dismiss Defendant's confusion regarding paragraph 7(d)(ii) as irrelevant.  The government, during the Motion to Withdraw hearing, stated that this paragraph was drafted to show Defendant that the minimum he could receive at sentencing was twelve years.  Therefore, the paragraph had nothing to do with Defendant's alleged confusion regarding the maximum he could receive.  But the government misses the point.  Whatever the government's intent may have been, it does not lessen the confusion created by paragraph

7(d)(ii).  In other words, the paragraph's purpose may have been to tell Defendant that, regardless of the sentencing guideline range, he would not receive a sentence less than twelve years.  But instead, Defendant misconstrued the paragraph by thinking that he would be sentenced to the minimum guideline range – whatever that may be (provided it was more than twelve years) – but that the minimum of the range would already include the additional seven years for count 4.

Finally, the government points to instances where Defendant appeared to understand that, depending on the guideline computation, he could be sentenced to more than twelve years or that the Court could sentence Defendant to the maximum statutory penalties.  (*See e.g.*, Gov't Resp. at 3-8; 14-15.)  The Court acknowledges that such examples do exist.  (*See e.g.*, Change of Plea Tr. at 19, 21, 27, 35.)  This acknowledgment, however, does not negate the Court's concern that Defendant believed that the government would recommend the minimum of the applicable guideline range, which would already include the enhanced penalty of seven years.  The source of confusion did not arise from Defendant's failure to understand that he may be sentenced to more than twelve years; rather, it came from his failure to understand the government's recommendation and that seven years would be tagged onto the minimum of the guideline range (which turned out to be nearly twelve years).

When examining the totality of the circumstances, the Court finds that Defendant did not comprehend the government's recommendations in the plea agreement and accordingly, the actual consequences of his guilty plea.  This conclusion is due in part to the nature of the charges in this case and the complexity of the sentencing issues that arise from the interplay between the sentencing guidelines and the mandatory minimum sentences.  *See Loutos*, 383 F.3d at 619 (the

complexity of the charges is one issue to consider in examining a validity of the Rule 11 colloquy). Moreover, the evident discomfort of Defendant during the plea hearing and the confusing plea agreement language – which the government conceded as such at the Motion to Withdraw hearing – provides the Court with additional reasons to conclude that there is an adequate fair and just reason to permit Defendant to withdraw his guilty plea.

### III.  CONCLUSION

For the reasons stated above, Defendant's Motion to Withdraw Plea of Guilty [Doc. 53] is **GRANTED**. Defendant's trial date will be scheduled shortly.

**SO ORDERED.**

ENTERED: August 29, 2006

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT